IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

**FILED**

MAR **8** – 2004

**U.S. DISTRICT COURT**
**CLARKSBURG, WV  26301**

COMVEST EXPORT FINANCE CO., INC.,
a West Virginia corporation,

Petitioner/Plaintiff,

v.

C.A. No. _1:04cv37_

U.S. SMALL BUSINESS ADMINISTRATION,
HECTOR V. BARRETTO, Individually and
as Administrator of the U.S. Small Business
Administration, and ARNOLD S. ROSENTHAL,
Individually and as ASSISTANT ADMINISTRATOR
OF THE U.S. SMALL BUSINESS ADMINISTRATION,

Respondents/Defendants.

## VERIFIED PETITION FOR WRIT OF MANDAMUS AND COMPLAINT DECLARATORY AND INJUNCTIVE RELIEF AND FOR MONETARY DAMAGES

Comvest Export Finance Co., Inc. ("Comvest"), a West Virginia corporation, petitions this Honorable Court pursuant to "The Mandamus Act" (28 U.S.C.A. § 1361) for issuance of a writ of mandamus against the U.S. Small Business Administration ("SBA"), Hector V. Barretto ("Barretto") and Arnold S. Rosenthal ("Rosenthal") to compel them to honor an SBA Guaranteed Loan for EWCP issued August 29, 2000 to the benefit of Comvest (the "Guarantee"), as lender, and further seeks declaratory relief pursuant to 28 U.S.C.A. § 2201 and rule 57, Federal Rules of Civil Procedure, a permanent injunction prohibiting any of the respondent/defendants from taking any action contrary to honoring the Guarantee and awarding Comvest the sums due pursuant to the Guarantee, additional compensatory damages, exemplary damages, costs, reasonable attorneys fees and such other and further relief the Court deems fair, just and appropriate.

## Parties

1.   Comvest Export Finance Co., Inc. ("Comvest") is a West Virginia corporation maintaining its principal place of business at 1400 Johnson Avenue, Suite 4G, Bridgeport, Harrison County, West Virginia.

2.   At all times herein relevant, Comvest was a lender in the SBA's "Export Working Capital Program" ("EWCP").

3.   U.S. Small Business Administration ("SBA") is an agency of the United States of America and maintains an office at 320 West Pike Street, Clarksburg, Harrison County, West Virginia.

4.   At all time herein relevant, SBA sponsored the EWCP.

5.   Hector V. Barretto ("Barretto") is, and was at all times herein relevant, the Administrator of the SBA and maintained an office at 403 3rd Street, S.W., 17th floor, Washington, D.C. 20416.

6.   Arnold S. Rosenthal ("Rosenthal") is, and was at all times herein relevant, an Assistant Administrator of the SBA and maintained an office at 403 3rd Street, S.W., 7th Floor, Washington, D.C.  20416.

## Jurisdiction and Venue

7.   This Court has subject matter jurisdiction over this matter pursuant to, inter alia, 28 U.S.C.A. § 1331 (federal question), 28 U.S.C.A. § 1361 (mandamus) and 28 U.S.C.A. § 2201 (declaratory judgment).

8.   Venue is properly in this District and Division.

## Facts

9.   In or about 1998, representatives of SBA approached Comvest Ltd., Inc. and advised that they had become aware that the company had some experience with export finance.

10.    Representatives of SBA urged Comvest Ltd., Inc. to participate in the SBA's export programs and in particular it's EWCP.

11.    Thereafter, two (2) of the shareholders of Comvest Ltd., Inc. caused Comvest to be formed and made application to the SBA as directed by SBA representatives.

12.    At the further urging of SBA, Comvest complied with the application requirements to become a "Special Purpose Lending Institution" (non-bank lender) in the SBA export programs.

13.    At the time of Comvest's approval as a "Special Purpose Lending Institution", Comvest was advised that they were only the second non-bank entity to be awarded such distinction.

14.    During the three (3) years following its approval as a "Special Purpose Lending Institution", Comvest funded 24 loans presented by the SBA under the EWCP.

15.    As part of its participation in the SBA EWCP, Comvest was presented in mid-2000 with a SBA proposal to fund a company known as Habanos Distributors, Inc., dba Habanos Cigar Holdings ("Habanos"), 717 Ponce de Leon Blvd., Coral Gables, Florida.

16.    The representative of the SBA who brought the Habanos Transaction to Comvest urged Comvest to do the Habanos transaction and advised Comvest that providing funding to Habanos was a priority of the SBA and that Habanos was a top credit.

17.    Upon information and belief, the SBA representative referenced in paragraph 16 above has been fired by SBA. The replacements for such representative were persons without export experience.

18.    Based upon information provided by SBA and Habanos, Comvest provided a credit facility to Habanos in the amount of $250,000.00 ("the Loan").

3

19.     On or about August 29, 2000 SBA approved a guarantee to the benefit of Comvest, which Guarantee was executed by the SBA on September 5, 2000 and by Comvest on September 15, 2000 (the "SBA Guarantee").  See Exhibit A, attached hereto and incorporated by reference.

20.     In conjunction with the approval and Guarantee, Habanos executed a note in the amount of $250,000.00 on September 14, 2000.  See Exhibit B, attached hereto and incorporated by reference.

21.     As a further condition of the Loan approval and guarantee, Gustavo Suarez and Raul Monee, each executed an Unconditional Guarantee on SBA Form 148.  See Exhibits C and D, attached hereto and unincorporated by reference.

22.     Thereafter, Comvest funded requests from Habanos with the knowledge, consent and approval of SBA acting by and through its agents, servants, workman and employees.

23.     In late 2001 issues developed with Habanos which caused Habanos to default in an amount not less than $241,851.70, all to the great detriment and loss of Comvest.

24.     Comvest continued to keep SBA, its agents, servants, workman and employees, aware of the problems and difficulties with Habanos and of Habanos' default of the Loan.

25.     At the specific instance, request and direction of SBA, Comvest engaged counsel and filed an action in a court of competent jurisdiction against Habanos Distributors, Inc., Gustavo Suarez and Raul L. Monee to enforce and collect the sum owed under the Loan and guarantees by Messers. Suarez and Monee.

26.     Comvest obtained a judgment against the parties referenced in paragraph 25, above, but to date have not been able to collect any monies to credit against its judgment.

27.     Prior to and after obtaining the judgment aforesaid, Comvest attempted to work with the SBA to collect pursuant to the SBA Guarantee.

28.     At various times SBA employees advised Comvest that they were entitled to the benefit of the SBA Guarantee.

29.   Notwithstanding the assurances by SBA employees that the SBA Guarantee would be honored, the SBA has failed and refused to honor the SBA Guarantee by citing certain alleged deficiencies in the Loan paperwork and operations, all of which so called deficiencies were known to the SBA, its agents, servants, workmen and employees.

30.   Finally, in or about February, 2003, SBA acting by and through Defendant Rosenthal, denied repair under the SBA Guarantee and the rules, regulations and policies of the SBA. See Exhibit E, attached hereto and incorporated by reference.

31.   At all times herein relevant, SBA failed and refused to follow its own rules, regulations and policies.

32.   On or about April 30, 2003, H. David Cutlip, President of Comvest, wrote Defendant Barretto, requesting the right to appeal the adverse decision memorialized by the denial letter from Defendant Rosenthal referenced in paragraph 30 above.  See Exhibit F, attached hereto and incorporated by reference.

33.   As of the date of the filing of this complaint, defendants and each of them has failed or refused to allow Comvest to perfect its appeal of the adverse decision.

34.   Upon information and belief, SBA, Rosenthal and Barretto have individually and collectively failed to allow pursuit by Comvest of its appeal rights because, contrary to the requirements of applicable law, no procedure is in place for appeals of denials of repairs in the SBA's EWCP.

35.   The SBA, Barretto and Rosenthal have acted in concert and in bad faith in their actions as regards Comvest and the SBA Guarantee of the Loan to Habanos.

36.   As a direct and proximate result of the actions herein stated, Comvest has suffered direct damages of not less than $241,851.70, and consequential damages of not less than $500,000.00.

PRAYER FOR RELIEF

WHEREFORE, the petitioner Comvest Export Finance Co., Inc. respectfully prays that this Honorable Court:

1.  Enter an order granting a writ of mandamus holding that (a) Comvest has a clear legal right to pursue administrative remedies of the denial of repair by defendants; (b) in the event the Court determines that the SBA does not have lawful regulations and procedures for appeals of EWCP repairs to enter an appropriate order in favor of Comvest on the SBA Guarantee in an amount not less than $741,851.70, plus interest and allowable costs; (c) Defendants SBA, Barretto and Rosenthal have acted in bad faith and award Comvest a monetary judgment, jointly and severally, against the defendants for costs and attorneys fees in bringing this civil action and a sum as additional compensation to dissuade defendants from conduct in the future; and (d) to compel SBA to take necessary steps to put in place appropriate and fair procedures for future appeals of denials of EWCP repairs; (e) permanently enjoin the SBA, Defendant Barretto and Defendant Rosenthal from taking any action contrary to the relief granted and barring any retaliatory action against Comvest Export Finance Co., Inc., its shareholders, parents, subsidiaries, affiliates, employees, attorneys and/or employees; and (f) provide such further and general relief as may be necessary and appropriate.

COMVEST EXPORT FINANCE CO., INC.

By Counsel

Edward D. McDevitt (WVSB #2437)
Courtney A. Kirtley (WVSB #9414)

Of Counsel

Bowles Rice McDavid Graff & Love PLLC
600 Quarrier Street [25301]
Post Office Box 1386
Charleston, West Virginia 25325
304-347-1100
304-343-3058 (facsimile)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

COMVEST EXPORT FINANCE CO., INC.,
  a West Virginia corporation,

        Petitioner/Plaintiff,

v.                                     C.A. No._____

U.S. SMALL BUSINESS ADMINISTRATION,
HECTOR V. BARRETTO, Individually and
as Administrator of the U.S. Small Business
Administration, and ARNOLD S. ROSENTHAL,
Individually and as ASSISTANT ADMINISTRATOR
OF THE U.S. SMALL BUSINESS ADMINISTRATION,

        Respondents/Defendants.

On February 7ᵀᴴ, 2004, H. David Cutlip appeared before me and, upon his oath, stated that he is President of Comvest Export Finance Co., Inc. and such is personally familiar with the facts alleged in the foregoing pleading, that he is authorized by Comvest Export Finance Co., Inc. to execute this verification on behalf of Comvest Export Finance Co., Inc., and that the facts therein alleged are true and correct, except those alleged upon information and belief, in which case he is so informed and believes them to be true and correct.

_____
H. David Cutlip

Taken, subscribed, and sworn to before me this 7th day of February, 2004.

My commission expires ___November 2, 2004___.

_____
Notary Public

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
LINDA J. GIMMEL
93 Cimarron Road
Clarksburg, W V 26301
My Commission Expires November 2, 2004

7

1182325



# U.S. Small Business Administration

# AUTHORIZATION
# (SBA GUARANTEED LOAN FOR EWCP)

| SBA Loan # | EWCP-ME-391,680-40-03-MIA |
|---|---|
| SBA Loan Name | Habanos Cigar Holdings |
| Approval Date | 8/29/2000 |

Lender:

**Comvest Export Finance Company, Inc.**
**1400 Johnson Ave.,Suite 4G**
**Bridgeport, WV26330**

U. S. Small Business Administration (SBA):

**South Florida District Office**
**100 S. Biscayne Blvd. 7ᵗʰ Floor**
**Miami, FL 33131**

SBA approves, under Section 7(a) of the Small Business Act as amended, Lender's application received May 4, 2000, for SBA to guarantee 90% of a Revolving, Export Working Capital Program (EWCP) loan ("Loan") in the amount of $250,000.00 for multiple transactions to assist:

Borrower:

1. **Habanos Distributors, Inc., dba Habanos**
   **Cigar Holdings**
   **717 Ponce de Leon Blvd.**
   **Coral Gables, FL 33134**

All requirements in the Authorization which refer to Borrower also apply to any Co-Borrower.

A. **THE GUARANTEE FEE IS $625.**

Lender must have paid the guarantee fee prior to SBA signing this authorization. SBA will not refund the guarantee fee after the date of this Authorization except as provided in SBA Standard Operating Procedures. Payment of the guarantee fee is not contingent upon disbursement. Lender may collect this fee from Borrower upon receipt by Lender of the Authorization.

B. **ONGOING SERVICING FEE** - Lender agrees to pay an ongoing fee equal to one-half of one percent per year of the guaranteed portion of the outstanding balance. Lender may not charge this fee to Borrower.

C. **IT IS LENDER'S SOLE RESPONSIBILITY TO:**

1. Close the Loan in accordance with the terms and conditions of this Authorization.

2. Obtain valid and enforceable Loan documents, including obtaining the signature or written consent of any obligor's spouse if such consent or signature is necessary to bind the marital community or create a valid lien on marital property.



**EXHIBIT**
**A**

3.  Retain all Loan closing documents. Lender must submit these documents, along with other required documents, to SBA for review if Lender requests SBA to honor its guarantee on the Loan, or at any time SBA requests the documents for review.

D.  **REQUIRED FORMS**

1.  Lender may use its own forms except as otherwise instructed in this Authorization. Lender must use the following SBA forms for the Loan:

    SBA Form 147, Note
    SBA Form CAP-1050, Semi-Annual Funds Lender's Disbursement Report Settlement Sheet
    SBA Form 159, Compensation Agreement, for each representative
    SBA Form 2004, Lender's Certification
    SBA Form 722, Equal Opportunity Poster
    SBA Form 793, Notice to New Borrowers
    SBA Form 148, Guarantee

2.  Lender may use computer-generated versions of mandatory SBA Forms, as long as these versions are exact reproductions.

3.  Lender must submit completed SBA Forms 159 and 2004 to the SBA immediately after initial disbursement.

4.  Lender must submit a completed SBA Form CAP-1050 after initial disbursement and then every six months beginning six months from the date of initial disbursement to the SBA office responsible for servicing this loan.

E.  **CONTINGENCIES** - SBA issues this Authorization in reliance on representations in the Loan application, including supporting documents. The guarantee is contingent upon Lender :

1.  Having and complying with a valid SBA Loan Guarantee Agreement (SBA Form 750 or SBA Form 750B for short-term loans) and any required supplemental guarantee agreements, including SBA Form 750EX, between Lender and SBA;

2.  Having paid the full guarantee fee in the time and manner required by this Authorization and the SOP.

3.  Complying with the current SBA Standard Operating Procedures (SOP);

4.  Complying with the EWCP Operating Guidelines.

5.  Note must be executed within [60 days **(default)** or 30 days **(option)** ] of the date of this Loan Authorization. Final disbursement must be made in time for all repayment to be concluded by Loan maturity.

6.  Having no evidence since the date of the Loan application, or any preceding disbursement, of any unremedied adverse change in the financial condition, organization, operations, or fixed assets of Borrower which would warrant withholding or not making any further disbursement. and;

7.  Satisfying all of the conditions in this Authorization.

---

F. NOTE TERMS: Lender must insert onto SBA Note, Form 147, to be executed by Borrower, the following repayment terms, without modification. Lender must complete all blank terms on the Note at time of closing:

1. **Maturity**: This is a Revolving Loan. The required SBA Form 147 is the master note. This Note will mature in twelve months from date of Note. Sub-notes, if used, will mature based on the Borrower's cash cycle for collection of the proceeds from the transaction financed by each draw. No sub-note may have a maturity dated later than the Note.

2. **Repayment Terms**:

The interest rate on this Note will fluctuate. The initial interest rate is 12.00% per year. This initial rate is the prime rate on the date SBA received the loan application, plus 2.50%.

Borrower must pay interest on the disbursed principal balance every month beginning one month from the month this Note is dated; monthly interest payments must be made on the same day as the date of this note. Principal payments must be made as follows:

Lender must apply a percentage of each transaction's proceeds to the outstanding loan balance sufficient to fully repay all funds drawn on this loan for that specific transaction plus accrued interest. Lender will apply each payment first to interest accrued to the date of receipt of payment and the balance to principal.

Lender may adjust the interest rate for the first time no earlier than the first calendar day of the first month after initial disbursement. The interest rate will then be adjusted monthly (the "change period").

The "Prime Rate" is the prime rate in effect on the first business day of the month in which a change occurs, as published in the Wall Street Journal on the next business day.

The adjusted interest rate will be 2.50% above the Prime Rate. Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

All remaining principal and accrued interest is due and payable twelve months from date of Note.

Lender will have no obligation to advance funds under this Note if Lender determines: (a) there is any default as defined in this Note; (b) there has been an unremedied substantial adverse change in Borrower's financial condition, organization, or operations; or (c) Borrower has used Loan funds for unauthorized purposes.

Lender may charge servicing fees.

## G. USE OF PROCEEDS AND CONDITIONS FOR DISBURSEMENT

1. The total outstanding principal balance of this Loan plus any amount authorized in support of Standby Letter(s) of Credit, may never exceed **$250,000.00**

---

SBA Loan Number: **EWCP-ME-391, 680-40-03-MIA**
SBA Loan Name: **Habanos Cigar Holdings, Inc.**

2. Prior to the initial disbursement of any loan funds or issuance of Standby Letters of Credit for any purpose financed with this loan, Lender must:

    a.   Obtain evidence that Borrower is current on all Federal and State taxes, including, but not limited to income taxes, payroll taxes, and sales taxes.

    b.   Review Ex-Im Bank's Country Limitation Schedule to ensure that the export shipments of this company are not going to a country where Ex-Im Bank is legally prohibited from providing support.

    c.   Agree to deduct all payroll taxes and make direct deposits to the appropriate Federal and State authorities, unless Borrower uses a reliable payroll service. Lender is responsible for appropriate withholding tax deposits on advances to Borrower for payroll. No Loan proceeds may be used to pay delinquent withholding taxes or other similar trust funds (state sales tax, etc.).

    d.   Obtain assignment(s) of any Letter of Credit, Export Credit Insurance policy (foreign receivables insurance), or contract proceeds appropriate to the transactions being financed, and written acknowledgement of all assignments.

    e.   Obtain control over incoming funds to capture payment of the foreign receivables.

    f.   Perfect all liens and verify that required lien positions have been obtained.

    g.   Obtain from Borrower a copy of valid export license for each transaction or a letter from Borrower stating a valid export license is not required, citing the authority for this statement.

**Loan Proceeds to be used for and disbursed as follows:**

    **Finance Multiple Export Transactions:** $250,000.00 to finance performance on multiple export transaction(s).

        a. Proceeds to be used for: financing of export accounts receivable.

    h.   Prior to disbursement, Lender must

        (1) Assure there is a foreign purchase order or contract, payable in U.S. dollars, supported by one of the following:

            (a) An open account sale supported by Export Credit Insurance (foreign receivables insurance) on the resulting receivables

            (b) .An open account sale to a foreign buyer(s) approved by SBA.

        (2) Assure the funds advanced for each transaction do not exceed:

            (a) **75%** of outstanding foreign receivables which are supported by Export Credit Insurance (foreign receivables insurance) or are from an open account with approved foreign buyers. Lender must not advance against any receivables in excess of 30 days past due or any receivables created by this Loan.

## H. COLLATERAL CONDITIONS

Lender must obtain a lien on 100% of the interests in the following collateral and properly perfect all lien positions:

1. First perfected security interest, subject to no other liens in the following personal property (including any products and proceeds), acquired with loan proceeds, including all replacements and substitutions, wherever located:

> Export Inventory
>
> Export Accounts

2. **Assignment of Export Insurance Proceeds**: Assignment of any Export Credit Insurance (foreign receivables insurance) proceeds on foreign receivables financed with this Loan.

3. **Guarantee on SBA Form 148** by Raul L. Monee and Gustavo Suarez, residents in Florida.

The following language must appear in all lien instruments including Mortgages, Deeds of Trust, and Security Agreements:

*"The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:*

a) *When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.*

b) *Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.*

*Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument."*

## C.   ADDITIONAL CONDITIONS

### 1.   Insurance Requirements

Prior to disbursement, Lender must require Borrower to obtain the following insurance coverage and maintain this coverage for the life of Loan:

a.   **Flood Insurance.** If FEMA Form 81-93 reveals that any portion of the collateral is located in a special flood hazard zone, Lender must require Borrower to obtain Federal flood insurance, or other appropriate special hazard insurance, in amounts equal to the lesser of the insurable value of the property or the maximum limit of coverage available. (Borrower will be ineligible for any future SBA disaster assistance or business loan assistance if Borrower does not maintain any required flood insurance for the entire term of the Loan.)

b.   **Personal Property Hazard Insurance** coverage on all equipment, fixtures or inventory that is collateral for the Loan, in the amount of full replacement costs. If full replacement cost insurance is not available, coverage should be for maximum insurable value. This policy must contain a <u>LENDER'S LOSS PAYABLE CLAUSE</u> in favor of Lender. This clause must provide that any act or neglect of the debtor or owner of the insured property

will not invalidate the interest of Lender. The policy or endorsements must provide for at least 10 days prior written notice to Lender of policy cancellation.

c.   **Marine/Freight Hazard Insurance coverage on all inventory in transit that is collateral for the Loan,** in the amount of full replacement cost. If full replacement cost insurance is not available, coverage should be for maximum insurable value. This policy must contain a <u>LENDER'S LOSS PAYABLE CLAUSE</u> in favor of Lender. This clause must provide that any act or neglect of the debtor or owner of the insured property will not invalidate the interest of Lender. The policy or endorsements must provide for at least 10 days prior written notice to Lender of policy cancellation. Lender.

2.   **Borrower and Guarantor Documents**

a.   Prior to closing, Lender must obtain from Borrower and Guarantor a current copy of each of the following as appropriate:

(1)   **Corporate Documents** - Articles or Certificate of Incorporation (with amendments), any By-laws, Certificate of Good Standing (or equivalent), Corporate Borrowing Resolution, and, if a foreign corporation, current authority to do business within this state.

(2)   **Limited Liability Company (LLC) Documents** - Articles of Organization (with amendments), Fact Statement or Certificate of Existence, Operating Agreement, Borrowing Resolution, and evidence of registration with the appropriate authority.

(3)   **General Partnership Documents** - Partnership Agreement, Certificate as to Partners, and Certificate of Partnership or Good Standing (or equivalent), as applicable.

(4)   **Limited Partnership Documents** - Partnership Agreement, Certificate as to Partners, and Certificate of Partnership or Good Standing (or equivalent), as applicable, Certificate of Limited Partnership, and evidence of registration with the appropriate authority.

(5)   **Limited Liability Partnership (LLP) Documents** - Partnership Agreement, Certificate as to Partners, Certificate of Partnership or Good Standing (or equivalent) as applicable, and evidence of registration with the appropriate authority.

(6)   **Trustee Certification** - A Certificate from the trustee warranting that:

(a)   The trust will not be revoked or substantially amended for the term of the Loan without the consent of SBA;

(b)   The trustee has authority to act;

(c)   The trust has the authority to borrow funds, guarantee loans, and pledge trust assets;

(d)   There is nothing in the trust agreement that would prevent Lender from realizing on any security interest in trust assets;

(e)   The trust agreement has specific language confirming the above; and

(f)   The trustee has provided and will continue to provide SBA with a true and complete list of all trustors and donors.

3.  **Operating Information**

Prior to any disbursement of Loan proceeds, Lender must obtain:

a.  **Verification of Financial Information** – Evidence that the financial information submitted to support the loan application is accurate using procedures required by SBA. Borrower must resolve any questions on accuracy to the satisfaction of Lender and SBA before Lender disburses Loan proceeds.

b.  **Trade Name** – Evidence Borrower has complied with state requirements for registration of Borrower's trade name (or fictitious name).

c.  **Authority to Conduct Business** - Evidence that Borrower has an Employer Identification Number and all insurance, licenses, permits and other approvals necessary to lawfully operate the business.

d.  **Flood Hazard Determination** - A completed Standard Flood Hazard Determination (FEMA Form 81-93).

e.  **Lease** - Current lease(s) on all business premises where collateral is located with term, including options, at least as long as the term of the Loan.

4.  **Certifications and Agreements**

a.  Lender must require Borrower to certify that:

(1) **Receipt of Authorization** - Borrower received a copy of this Authorization and SBA Form 793, Notice to New SBA Borrower, from Lender, and acknowledge that:

(a) The Authorization is <u>not</u> a commitment by Lender to make a loan to Borrower;

(b) The Authorization is between Lender and SBA and creates no third party rights or benefits to Borrower;

(c) The Note will require Borrower to give Lender prior notice of intent to prepay.

(d) If Borrower defaults on Loan, SBA may be required to pay Lender under the SBA guarantee. SBA may then seek recovery of these funds from Borrower. Under SBA regulations, 13 CFR Part 101, Borrower may not claim or assert against SBA any immunities or defenses available under local law to defeat, modify or otherwise limit Borrower's obligation to repay to SBA any funds advanced by Lender to Borrower.

(e) Payments by SBA to Lender under SBA's guarantee will not apply to the Loan account of Borrower, or diminish the indebtedness of Borrower under the Note or the obligations of any personal guarantor of the Note.

(2) **Child Support** - No principal who owns at least 50% of the ownership or voting interest of the company is delinquent more than 60 days under the terms of any (a) administrative order, (b) court order, or (c) repayment agreement requiring payment of child support.

(3) **Current Taxes** - Borrower is current on all federal, state, and local taxes, including but not limited to income taxes, payroll taxes, real estate taxes, and sales taxes.

b.  Lender must require Borrower to certify that it will:

(1) **Reimbursable Expenses**- Reimburse Lender for expenses incurred in the making and administration of the Loan.

---

(2) **Books, Records, and Reports-**
   (a) Keep proper books of account in a manner satisfactory to Lender;
   (b) Furnish compiled year-end statements to Lender within 120 days of fiscal year end;
   (c) Furnish additional financial statements or reports whenever Lender requests them;
   (d) Allow Lender or SBA, at Borrower's expense, to:
      (i) Inspect and audit books, records and papers relating to Borrower's financial or business condition;
      (ii) Inspect and appraise any of Borrower's assets; and
      (iii) Allow all government authorities to furnish reports of examinations, or any records pertaining to Borrower, upon request by Lender or SBA.
   (e) Provide at least monthly:
      (i) an aged list of receivables of buyers;
      (ii) a listing of all current, unshipped purchase orders and their cancellation date and/or letters of credit not yet negotiated and their validity date.
   (f) Review and execute the CAP-1050, Semi-Annual Funds Disbursement Report when directed by the Lender.

(3) **Equal Opportunity** - Post SBA Form 722, Equal Opportunity Poster, where it is clearly visible to employees, applicants for employment and the general public, and comply with the requirements of SBA Form 793, Notice to New SBA Borrowers.

(4) **American-made Products** - To the extent feasible, purchase only American-made equipment and products with the proceeds of the Loan.

(5) **Taxes** - Pay all federal, state, and local taxes, including income, payroll, real estate and sales taxes of the business when they come due.

c. Lender must require Borrower to certify that it will not, without Lender's prior written consent:

   (1) **Distributions** - Make any distribution of company assets that will adversely affect the financial condition of Borrower.

   (2) **Ownership Changes** - Change the ownership structure or interests in the business during the term of the Loan.

   (3) **Transfer of Assets** - Sell, lease, pledge, encumber (except by purchase money liens on property acquired after the date of the Note), or otherwise dispose of any of Borrower's property or assets, except in the ordinary course of business.

ADMINISTRATOR
SMALL BUSINESS ADMINISTRATION

By: _____          _____9/5/00_____
                                              Date

---

In consideration of SBA`s guarantee of the Loan to be made by Lender to Borrower, Lender accepts the above conditions.

**Comvest Export Finance Co., Inc.**

By: _____          9 - 15 - 00

         _____          Date

# ACKNOWLEDGEMENT

This acknowledgement, dated and made effective this __15th__ day of September 2000, by HABANOS DISTRIBUTORS, INC., dba HABANOS CIGAR HOLDINGS, a corporation, whose address is 717 Ponce de Leon Blvd. Coral Gables Florida 33134 declares they have received, from Comvest Export Finance Co., Inc., a signed copy of the SBA Authorization known as authorization # EWCP-ME-391,680-40-03-MIA. Said authorization has been read and is understood by all parties involved.


Copy furnished by: _____
                         H. David Cutlip


Receipt Acknowledged by: _____
                                Raul L. Monee

_____
        Gustavo Suarez



# U.S. Small Business Administration

# NOTE

| | |
|---|---|
| SBA Loan # | EWCP-ME-391,680-40-03 MIA |
| SBA Loan Name | Habanos Distributors, Inc. dba Habanos Cigar Holdings |
| Date | 9/14/00 |
| Loan Amount | $250,000.00 |
| Interest Rate | Prime Plus 2.50%  (initial rate 12%) |
| Borrower | Habanos Distributors, Inc.,  dba Habanos Cigar Holdings |
| Operating Company | Habanos Distributors, Inc.,  dba Habanos Cigar Holdings |
| Lender | Comvest Export Finance Co., Inc. |

1. PROMISE TO PAY:

In return for the Loan, Borrower promises to pay to the order of Lender the amount of

_____ Two hundred fifty thousand 00/100 _____ Dollars,

interest on the unpaid principal balance, and all other amounts required by this Note.

2. DEFINITIONS:

"Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

"Guarantor" means each person or entity that signs a guarantee of payment of this Note.

"Loan" means the loan evidenced by this Note.

"Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.



EXHIBIT

B

4.   RIGHT TO PREPAY:

Borrower may prepay this Note.  Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice.  If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must:

A.   Give Lender written notice;

B.   Pay all accrued interest; and

C.   If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph B.

If Borrower does not prepay within 60 days from the date Lender receives the notice, Borrower must give Lender a new notice.

5.   DEFAULT:

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

A.   Fails to do anything required by this Note and other Loan Documents;

B.   Defaults on any other loan with Lender;

C.   Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;

D.   Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

E.   Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

F.   Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

G.   Fails to pay any taxes when due;

H.   Becomes the subject of a proceeding under any bankruptcy or insolvency law;

I.   Has a receiver or liquidator appointed for any part of their business or property;

J.   Makes an assignment for the benefit of creditors;

K.   Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;

L.   Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or

M.   Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

6.   LENDER'S RIGHTS IF THERE IS A DEFAULT:

Without notice or demand and without giving up any of its rights, Lender may:

A.   Require immediate payment of all amounts owing under this Note;

B.   Collect all amounts owing from any Borrower or Guarantor;

C.   File suit and obtain judgment;

D.   Take possession of any Collateral; or

E.   Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

7.   LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

A.   Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;

B.   Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

C.   Release anyone obligated to pay this Note;

D.   Compromise, release, renew, extend or substitute any of the Collateral; and

E.   Take any action necessary to protect the Collateral or collect amounts owing on this Note.


8.   WHEN FEDERAL LAW APPLIES:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.


9.   SUCCESSORS AND ASSIGNS:

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.


10.  GENERAL PROVISIONS:

A.   All individuals and entities signing this Note are jointly and severally liable.

B.   Borrower waives all suretyship defenses.

C.   Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

D.   Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.

E.   Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

F.   If any part of this Note is unenforceable, all other parts remain in effect.

G.   To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

11. STATE-SPECIFIC PROVISIONS:

NONE

12. BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

HABANOS DISTRIBUTORS, INC. dba HABANOS CIGAR HOLDINGS

BY _Raul L Monne_

ITS _President_

ATTESTED BY _Raul L. Monne_
                     Secretary

                                        CORPORATE SEAL



# U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | EWCP-ME-391,680-40-03-MIA |
|---|---|
| SBA Loan Name | HABANOS DISTRIBUTORS, INC., dba HABANOS CIGAR HOLDINGS |
| Guarantor | GUSTAVO SUAREZ |
| Borrower | HABANOS DISTRIBUTORS INC., dba HABANOS CIGAR HOLDINGS |
| Lender | COMVEST EXPORT FINANCE CO., INC. |
| Date | 9/14/00 |
| Note Amount | $250,000.00 |

1.   GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2.   NOTE:

The "Note" is the promissory note dated _____9/14/00_____ in the principal amount of _____Two hundred fifty thousand 00/100_____ Dollars,

from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3.   DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.



EXHIBIT

C

4.   LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A.   Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B.   Refrain from taking any action on the Note, the Collateral, or any guarantee;

C.   Release any Borrower or any guarantor of the Note;

D.   Compromise or settle with the Borrower or any guarantor of the Note;

E.   Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F.   Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G.   Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H.   Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5.   FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6.   RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A.   Guarantor waives all rights to:
   1)   Require presentment, protest, or demand upon Borrower;
   2)   Redeem any Collateral before or after Lender disposes of it;
   3)   Have any disposition of Collateral advertised; and
   4)   Require a valuation of Collateral before or after Lender disposes of it.

B.   Guarantor waives any notice of:
   1)   Any default under the Note;
   2)   Presentment, dishonor, protest, or demand;
   3)   Execution of the Note;
   4)   Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
   5)   Any change in the financial condition or business operations of Borrower or any guarantor;
   6)   Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
   7)   The time or place of any sale or other disposition of Collateral.

C.   Guarantor waives defenses based upon any claim that:
   1)   Lender failed to obtain any guarantee;
   2)   Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
   3)   Lender or others improperly valued or inspected the Collateral;
   4)   The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) Lender impaired the Collateral;

6) Lender did not dispose of any of the Collateral;

7) Lender did not conduct a commercially reasonable sale;

8) Lender did not obtain the fair market value of the Collateral;

9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) Lender made errors or omissions in Loan Documents or administration of the Loan;

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor:

13) Lender impaired Guarantor's suretyship rights;

14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7.  DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8.  SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9.  GENERAL PROVISIONS:

A.  ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B.  SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C.  SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D.  JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E.  DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F.  FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G.  LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H.  ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I.  SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J.  CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

NONE

11.  GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12.  GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

Gustavo Suzrez



U.S. Small Business Administration

# U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | EWCP-ME-391,680-40-03-MIA |
|---|---|
| SBA Loan Name | HABANOS DISTRIBUTORS, INC.   dba HABANOS CIGAR HOLDINGS |
| Guarantor | RAUL L. MONEE |
| Borrower | HABANOS DISTRIBUTORS, INC. dba HABANOS CIGAR HOLDING |
| Lender | COMVEST EXPORT FINANCE CO., INC. |
| Date | 9/14/00 |
| Note Amount | $250,000.00 |

1.  **GUARANTEE:**

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note.  This Guarantee remains in effect until the Note is paid in full.  Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor.  Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2.  **NOTE:**

The "Note" is the promissory note dated _____9/14/00_____ in the principal amount of

_____Two hundred fifty thousand 00/100_____ Dollars,

from Borrower to Lender.  It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3.  **DEFINITIONS:**

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.



**EXHIBIT**

**D**

4.  LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A.  Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B.  Refrain from taking any action on the Note, the Collateral, or any guarantee;

C.  Release any Borrower or any guarantor of the Note;

D.  Compromise or settle with the Borrower or any guarantor of the Note;

E.  Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F.  Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G.  Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H.  Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5.  FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations.  Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes.  By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability.  As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6.  RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A.  Guarantor waives all rights to:
    1)  Require presentment, protest, or demand upon Borrower;
    2)  Redeem any Collateral before or after Lender disposes of it;
    3)  Have any disposition of Collateral advertised; and
    4)  Require a valuation of Collateral before or after Lender disposes of it.

B.  Guarantor waives any notice of:
    1)  Any default under the Note;
    2)  Presentment, dishonor, protest, or demand;
    3)  Execution of the Note;
    4)  Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
    5)  Any change in the financial condition or business operations of Borrower or any guarantor;
    6)  Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
    7)  The time or place of any sale or other disposition of Collateral.

C.  Guarantor waives defenses based upon any claim that:
    1)  Lender failed to obtain any guarantee;
    2)  Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
    3)  Lender or others improperly valued or inspected the Collateral;
    4)  The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5)   Lender impaired the Collateral;

6)   Lender did not dispose of any of the Collateral;

7)   Lender did not conduct a commercially reasonable sale;

8)   Lender did not obtain the fair market value of the Collateral;

9)   Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10)  The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11)  Lender made errors or omissions in Loan Documents or administration of the Loan;

12)  Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

13)  Lender impaired Guarantor's suretyship rights;

14)  Lender modified the Note terms, other than to increase amounts due under the Note.  If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15)  Borrower has avoided liability on the Note; or

16)  Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7.   DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee.  Lender has no duty to preserve or dispose of any Collateral.

8.   SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9.   GENERAL PROVISIONS:

A.   ENFORCEMENT EXPENSES.  Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B.   SBA NOT A CO-GUARANTOR.  Guarantor's liability will continue even if SBA pays Lender.  SBA is not a co-guarantor with Guarantor.  Guarantor has no right of contribution from SBA.

C.   SUBROGATION RIGHTS.  Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D.   JOINT AND SEVERAL LIABILITY.  All individuals and entities signing as Guarantor are jointly and severally liable.

E.   DOCUMENT SIGNING.  Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F.   FINANCIAL STATEMENTS.  Guarantor must give Lender financial statements as Lender requires.

G.   LENDER'S RIGHTS CUMULATIVE, NOT WAIVED.  Lender may exercise any of its rights separately or together, as many times as it chooses.  Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H.   ORAL STATEMENTS NOT BINDING.  Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I.   SEVERABILITY.  If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J.   CONSIDERATION.  The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10.  STATE-SPECIFIC PROVISIONS:

NONE

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

Raul L. Monee

Phone: 202-205-7131
Fax: 202-481-0914

**Small Business
Administration**



| To: | David Cutlip | From: | Dana M. Relyea |
|---|---|---|---|
| Fax: | (304) 842-6217 | Date: | February 6, 2003 |
| Phone: | 304-622-3159 | Pages: | 5 |
| Re: | Habanos Distributors | CC: | |

☐ Urgent   x For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

•**Comments:**

Attached please find our letter outlining significant issues as we discussed last week.

**EXHIBIT**

**E**

February 4, 2003

Mr. H. David Cutlip, President
Comvest Export Finance Co, Inc.
PO Box 2025
Clarksburg, WV. 26302

RE:  Habanos Distributors
       SBA Loan # EWCP3916804003

Dear Mr. Cutlip:

It is my understanding that you met with Walter Intlekofer and Dana Relyea on Friday January 31, 2002 to discuss the difficulties being encountered by the SBA in honoring your request of the Agency to purchase the Habanos loan. I am told that you were able to discuss the issues with frankness and cordiality and although there was no meeting of the minds as to any mutually acceptable resolution, that you would be given an opportunity to present such new information or explanation that might be of benefit in our final analysis and recommendation concerning the guaranty on this loan. To assist you in that endeavor, we agreed to send you a brief outline of the major material issues that have to date prevented SBA staff from recommending approval to your request for payment on the loan guaranty. While by no means an exhaustive list, what follows below is a summation of the significant material issues and their impact relative to the loan guaranty. Kindly review and provide your written response as expeditiously as possible so we can move this matter forward to a conclusion.

1.  **Lender failed to obtain control over the incoming funds, yet continued to disburse on the loan.**

    a.  As a key component of the EWCP program, the SBA authorization requires that the lender, prior to disbursement on each export transaction, obtain possession and control of incoming funds to ensure loan repayment from the foreign receivables. Failure to take control of the foreign receivables allowed the borrower complete control over the funds paid on these receivables and enabled the borrower to use the funds for purposes other than to repay the loan. Thus, the primary control mechanism crafted to minimize repayment problems was defeated. Some well intentioned but ineffectual "invoice sticker" controls were ultimately attempted by the lender, but only after eight months of the twelve-month loan term had elapsed, during which time the lender made five separate loan disbursements. This attempted remedy did

1

not rise to a level commensurate with "obtaining possession and control" and proved to be ineffective and insufficient to prevent the loss of monies from the receivables which were the primary source of repayment for this loan.

b.  With reference to the "stickers," the lender provided the borrower with stickers to place on the billings that were called "payment redirection stickers" at the earliest, eight months into the loan term and after the lender had made at least 5 disbursements on the loan leaving an outstanding balance of $208,179. Had the lender acted swiftly prior to or concurrent with earlier loan disbursements to obtain and formulate alternative acceptable arrangements for the control and collection of the receivables, the outcome on this loan perhaps might have been much different, even given the alleged fraud and casualty loss by the borrower.

c.  As a defense, the Lender asserts that it attempted to obtain a lock box agreement from the borrower's bank, but the bank refused to execute the agreement. The lender contends that it then sought guidance from the SBA and followed the recommendation of the Office of International Trade (OIT) in Washington and provided the borrower with stickers to put on the accounts receivable billings to notify customers that payments should be made directly to the lender. We have been unable to locate documentation in the file to support the contention that OIT instructed the lender to do so or more importantly that anyone authorized the lender to alter the requirements of the authorization.

2.  Lender failed to perfect all liens, obtain the required insurance, and verify that required lien positions were obtained.

a.  The loan authorization required the loan to be secured by a first lien position in export inventory and export accounts, and verify that required lien positions were obtained. In actuality, however, only a 3rd lien was obtained which presumably prevented the lender from seeking these assets as a source of repayment for the loan. In a response to SBA concerning the lack of required first lien position, the lender said that "since subordinations were not required, none were sought". The lender was technically correct as the SBA asked for no such subordination because SBA required a first lien position. Thus, since evidence indicates that prior liens existed, the lender should have obtained any subordination necessary to perfect the required first lien position.

b.  When it discovered that it could not obtain a first lien in October 2000, the lender should have requested a modification to the terms of the authorization, or at least notified SBA or stopped making disbursements on the loan.

c.  The lender's failure to secure a first lien allowed the borrower to obtain funds from other lenders using the inventory as collateral and would have made any attempt to seize these assets problematic and ineffectual.

d.  There is no evidence that the lender took any successful action to protect its security interest in the collateral after the borrower reported that its place of business had been burglarized, or even after the borrower had replaced the inventory following the alleged burglary. The lender's failure to obtain a timely Hazard Policy containing the proper "Lenders Loss Payable Clause" prevented the lender from collecting on such a policy.

e.  Lender belatedly obtained some export credit insurance that would have enabled payment to the lender if the buyer failed to pay the insured invoices.

However, this action was too late since payments were made to the borrower by the buyer. Absent failure by the buyer to pay, the lender had no basis for a claim.

Case 1:04-cv-00003-RRB   Document 36-10   Filed 06/30/2004   Page 36 of 38   Page ID #: 36

3. **Lender failed to properly monitor payments to ensure the borrower was making monthly interest payments and debt reduction commensurate with the terms of the loan.**

   a. This revolving SBA line of credit loan had a twelve-month term, and required that the borrower make monthly interest payments on the outstanding principal balance and be fully paid at the end of the twelve month term. Principal reductions on the loan were to be made by the lender from funds paid to the borrower from each export transaction, in an amount sufficient to fully repay all funds disbursed for that specific transaction, plus accrued interest. Although there are some unreconciled discrepancies in the transcripts, evidence suggests that the lender did not ensure that the borrower made all required monthly interest payments on the loan, yet the lender continued to disburse funds to the borrower.

   b. According to the lender's Certified Transcript of Account, the borrower did not make any payments in January or February of 2001. The borrower made a payment on December 28, 2000 and the next payment was not made until March 27, 2001. The payments for interest for the months of January and February were not made until March 27, 2001 (covering interest accrued 1-1-01 to 1-31-01) and April 17, 2001 (covering interest accrued 2-1-01 to 3-31-01). The lender's failure to properly monitor the borrower's payments on the account while continuing to disburse funds to the borrower to fulfill purchase orders constitutes a failure to service this account in a prudent manner and increased SBA's risk in this transaction.

   c. The Note was dated September 14, 2000. On October 29, 2001, the lender submitted a written request to SBA for an extension of the maturity date for 6 months, stating that the lender was in receipt of orders that would cover the outstanding balance on the loan during that time period. SBA responded on November 8, 2001, with a request for additional information including the outstanding balance, an explanation/justification for the request, along with an explanation as to why advances were made on the loan that were not going to be repaid by the maturity date, and an itemized list of disbursements on the loan subsequent to April 2001. The lender apparently did not respond. The lender did not indicate any internal problems or remedies to the problems encountered, and did not provide explanations to the issues raised by the District Office.

4. **Lender failed to take any action to recover on the loan.**

   a. In its January 9, 2002 letter demanding purchase of the guaranty, the lender made numerous allegations of fraud against the borrower including a conversion, failure to notify lender of a burglary/theft of its facility, failure to pay a supplier and the subsequent garnishment of bank funds as a result of civil action against the borrower by the supplier, embezzlement of over $100,000 in company funds by a company official, change of management, and transfer of production and distribution to another company. We have been unable to locate documentation to support these allegations. More importantly, there is nothing in the file to indicate that the lender made any

3

attempt to pursue legal action against the borrower or its principals for any of the alleged wrongdoing.

b.   On May 25, 2001 and again on October 29, 2001, the lender submitted written requests for an extension of maturity and stated that the borrower was in receipt of purchase orders sufficient to pay the loan in full. Thus, the borrower had been able to "restore its inventory" and had purchase orders (which should have generated receivables) to pay the loan in full as late as October 2001. But, by January 9, 2002, the date the lender demanded that SBA honor its guaranty, there was "no inventory and no receivables." Rather than make any attempt to collect or recover any monies on the loan, the lender apparently simply requested that SBA honor its guaranty and take over servicing and liquidation of this account. Thus, there is no evidence that the lender took any action to protect its security interest in the collateral after the borrower reported that its place of business had been burglarized, or even after the borrower had replaced the inventory following the alleged burglary.

As can be seen, there were a series of multiple failures that collectively worked to defeat EWCP program controls. It is also apparent that the nature of these failures prevents SBA from finding a basis to justify a repair. Please understand that a recommendation for full denial involving one of our valued participants is not an action we ever take lightly. We regret having to make such a determination and kindly ask you to forward to SBA any material and relevant information that might suggest a different course of action.

Sincerely,

Arnold S. Rosenthal
Assistant Administrator
 for Portfolio Management

4

# Comvest Export Finance Co., Inc.

P. O. Box 2025 – Clarksburg, WV 26302
(304) 622-3159 --  (800) 638-6276  -- Fax  (304) 842-6217
E-Mail -- david.cutlip@comvestltd.com

April 30, 2003

Hector V. Barretto, Administrator
U. S. Small Business Administration
409 3rd Street, S. W
Washington Office Center Suite 7000
Washington, DC  20416

Dear Administrator Barretto:

Our firm has received a letter of denial of guarantee on an EWCP Loan from the Small Business Administration. The letter indicates that you approved said denial. We are requesting the avenues that are available for appeal without having to go to Federal Court.

We have and continue to believe, there are substantial reasons why the SBA should honor their guarantee. The SBA policy indicates your department is to negotiate settlements.  This has not happened.  We have made everyone aware that we are not a large firm, which can absorb these losses. We are a small firm who was recruited by your agency to offer Export loans. The loan, which defaulted, was a loan the SBA USEAC employee brought to us for funding and we did such based on their credit analysis. Additionally, the loan went into default because of a fraudulent act and not as the local office has maintained because of control of funds.

We request your personal attention to this matter. We remain open to discussing the issue and believe the results impact the agency and will be the demise of our firm.

Sincerely,

H. David Cutlip
President

Cc      file
        The Honorable  John D. Rockefeller
        The Honorable  Robert C. Byrd
        The Honorable  Alan Mollohan
        The Honorable  Shelly Moore Capito



EXHIBIT

F